1

2

UNITED STATES DISTRICT COURT

3

SOUTHERN DISTRICT OF CALIFORNIA

4

DECIRE G. BOITNOTT,                     Case No.:  14cv2977 BTM(DHB)

5

Plaintiff,              **ORDER GRANTING IN PART**
**PLAINTIFF'S MOTION FOR**

6

v.                                      **SUMMARY JUDGMENT,**
**DENYING DEFENDANT'S**

7

CAROLYN W. COLVIN, Acting               **MOTION FOR SUMMARY**
Commissioner of Social Security,        **JUDGMENT, VACATING ALJ'S**

8                                               **DECISION, AND REMANDING**
Defendant.              **FOR FURTHER PROCEEDINGS**

9

10

11          In this action, Plaintiff Decire G. Boitnott seeks review of the Commissioner

12  of Social Security's denial of her application for a period of disability and disability

13  insurance benefits.  Plaintiff and Defendant have filed cross-motions for summary

14  judgment.   For the reasons discussed below, the Court **GRANTS IN PART**

15  Plaintiff's motion for summary judgment, **DENIES** Defendant's motion for summary

16  judgment, **VACATES** the Commissioner's decision, and **REMANDS** for further

17  proceedings.

18

19                          **I.  PROCEDURAL BACKGROUND**

20          On March 12, 2012, Plaintiff protectively filed a Title II application for a period

of disability and disability insurance benefits, alleging disability beginning January

1

5, 2011.   Plaintiff's claim was denied initially on June 15, 2012, and upon reconsideration on November 27, 2012.

On August 23, 2013, Plaintiff's claim was heard by Administrative Law Judge James P. Nguyen (the "ALJ").  On September 20, 2013, the ALJ issued a decision denying benefits.  Plaintiff filed a request for review with the Appeals Council, which was denied on October 20, 2014.  The ALJ's decision then became the final decision of the Commissioner of Social Security.  Plaintiff seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

## II.  ALJ'S FINDINGS AND CONCLUSIONS

The ALJ conducted the five-step sequential analysis set forth in 20 C.F.R. § 404.1520.[1]

At the outset, the ALJ found that Plaintiff met the insured status requirements

---

[1] Under the Social Security Regulations, the determination of whether a claimant is disabled within the meaning of the Social Security Act is a five step process. The five steps are as follows: (1) Is the claimant presently working in any substantially gainful activity?  If so, then the claimant is not disabled.  If not, then the evaluation proceeds to step two. (2) Is the claimant's impairment severe?  If not, then the claimant is not disabled.  If so, then the evaluation proceeds to step three.  (3) Does the impairment "meet or equal" one of a list of specific impairments set forth in Appendix 1 to Subpart P of Part 404?  If so, then the claimant is disabled.  If not, then the evaluation proceeds to step four.  (4) Is the claimant able to do any work that she has done in the past?  If so, then the claimant is not disabled.  If not, then the evaluation proceeds to step five.  (5) Is the claimant able to do any other work?  If not, then the claimant is disabled.  If, on the other hand, the Commissioner can establish that there are a significant number of jobs in the national economy that the claimant can do, the claimant is not disabled.  20 C.F.R. § 404.1520. See also Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999).

2

14cv2977 BTM(DHB)

1   of the Social Security Act through December 31, 2016.  (AR 12.)

2          The ALJ then found that Plaintiff had not engaged in substantial gainful

3   activity since January 5, 2011, the alleged onset date.

4          Next, the ALJ found that Plaintiff had the following severe impairments:  gout,

5   fibromyalgia, arthritis, obesity, a mood disorder, and depression.

6          The ALJ determined that Plaintiff did not have an impairment or combination

7   of impairments that meets or medically equals the severity of one of the listed

8   impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  The ALJ considered

9   whether Plaintiff's mental impairments met or medically equaled the criteria of

10  Listing 12.04 (Affective Disorder). [2]  The ALJ concluded that Plaintiff did not satisfy

11  the "Paragraph B" criteria because Plaintiff only had a mild restriction in activities

12  of daily living, moderate difficulties in social functioning, moderate difficulties with

13  respect to concentration, persistence and pace, and no episodes of

14

15  _____

16          [2] In order to meet Listing 12.04, a claimant must provide medically documented findings
    of specified signs and symptoms and must also satisfy the criteria in either Paragraph B or
17  Paragraph C of the Listing. See 20 C.F.R., subpt. P, app. 1 § 12.04.  Paragraph B requires that
    Plaintiff's symptoms result in at least two of the following: (1) marked restriction of activities of
18  daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in
    maintaining concentration, persistence, or pace; or (4) repeated episodes of decompensation,
    each of extended duration.  Paragraph C requires medical evidence of a chronic affective
19  disorder lasting at least two years and one of the following: (1) repeated episodes of
    decompensation, each of extended duration; (2) a prediction that a minimal change in the
20  claimant's environment would cause him to decompensate; or (3) a current history of at least
    one year's inability to function outside a highly supportive living arrangement, with an indication
    of continued need for such an arrangement.

3

1 | decompensation.  The ALJ also found that the evidence failed to establish the

2 | presence of "Paragraph C" criteria.

3 | At step five, the ALJ found that Plaintiff has the residual functional capacity

4 | to perform light work as defined in 20 C.F.R. 404.1567(b), except:  Plaintiff can no

5 | more than occasionally climb ramps and stairs; never climb ladders, ropes, or

6 | scaffolds; occasionally balance, stoop, kneel, crouch, and crawl; can have only

7 | occasional exposure to extreme heat and cold and vibration; and should avoid

8 | working around unprotected heavy machinery or at unprotected heights.  The ALJ

9 | also found that (1) Plaintiff can understand, remember, and carry out simple job

10 | instructions and maintain attention and concentration necessary to perform simple,

11 | routine, and repetitive tasks; (2) Plaintiff can have frequent interaction with

12 | coworkers and supervisors, but only occasional interaction with the general public;

13 | and (3) Plaintiff can work in an environment with occasional changes to the work

14 | setting and requiring no more than occasional work related decision making.

15 | In making his findings regarding Plaintiff's residual functional capacity, the

16 | ALJ determined that Plaintiff's testimony at the hearing failed to credibly establish

17 | functional limitations greater than set forth in the ALJ's decision.

18 | Although the ALJ found that Plaintiff was unable to perform any past relevant

19 | work, based on the testimony of a vocational expert, the ALJ determined that

20 | Plaintiff has the residual functional capacity to perform other work that exists in

4

significant numbers in the national economy, such as mail clerk (DOT 209.687-026), routing clerk (DOT 222.587-038), and bagger (DOT 920.687-018). Therefore, the ALJ concluded that Plaintiff is not disabled within the meaning of the Social Security Act.

### III. STANDARD

The Commissioner's denial of benefits may be set aside if it is based on legal error or is not supported by substantial evidence. Jamerson v. Chater, 112 F.3d 1064, 1066 (9th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance. Id. Substantial evidence is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Flaten v. Secretary of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995). A denial of benefits must be upheld if the evidence could reasonably support either affirming or reversing the ALJ's decision. Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

### IV. DISCUSSION

Plaintiff argues that the Commissioner's decision should be reversed and that benefits should be awarded to her because (1) the ALJ failed to articulate clear and convincing reasons for rejecting her testimony; and (2) the ALJ failed to

5

properly evaluate her mental impairments when determining whether the criteria of Listing 12.04 were satisfied.  As discussed below, the Court finds that the ALJ's stated grounds for rejecting Plaintiff's testimony, which relates to her mental as well as physical impairments, are not supported by the record.  The Court further finds that outstanding factual issues must be resolved before a determination of disability can be made.  Therefore, the Court remands for further proceedings instead of awarding benefits.

A. <u>Plaintiff's Testimony</u>

At the hearing, Plaintiff testified that she had just moved in with her mother and previously lived by herself in an apartment.  (AR 28-29.)  She stated that her daughter helped her with most household chores.  (AR 29.)  Starting May 1, 2013, she had a job through IHSS taking care of her mother.  (AR 29.)  She used to work 98 hours a month but her hours were decreased to 60 hours a month starting September 1, 2013.  (AR 30.)  Her duties include taking her mother to her doctor's appointments, taking her to the grocery store, performing light housekeeping, and reminding her to take her medication.  (AR 31.)  Her mother is independent and does not need help physically.  (AR 31.)

Plaintiff experiences pain as a result of her fibromyalgia.  (AR 32.)  Her medications do not help her symptoms.  (AR. 32.)  Her arthritis affects her knees

1    and wrists.  (AR 33.)  She gets flare ups of gout twice a month.  (AR 34.)  The flare

2    ups last five to seven days.  (AR 34.)  When she experiences the flare ups, it is

3    hard for her to get out of bed because her ankles get very swollen.  (AR 34.)  The

4    last flare up she had was two weeks before the hearing.  (AR 34.)  She has been

5    taking medication for gout for a couple of years.  (AR 34.)  The medication helps a

6    little bit but not as much as she would like.  (AR 35.)

7         Plaintiff is being treated at Exodus Recovery Center for her depression.  (AR

8    33.)  She gets depressed "[o]ff and on every other day."  (AR 34.)  She doesn't

9    want to do anything and doesn't have a social life."  (AR 34.)  She does not leave

10   her residence very much, only if she has to go to the doctor's or grocery store.  (AR

11   36.)  She will go up to four days not leaving her residence because she does not

12   want to do anything.  (AR 37.)  Sometimes she does not want to get out of bed and

13   sometimes does not change out of her night clothes.  (AR 37.)  There are many

14   days when she does not leave her room.  (AR 37.)  She does not see any friends

15   and has no social activities.  (AR 37-38.)  She started getting depressed and

16   staying indoors in 2011 when her pain got worse and the medication was not

17   helping.  (AR 38.)

18        She passes the time watching T.V. and sometimes checks e-mails.  (AR 39.)

19   She cannot focus for too long and if she lays in bed too long, her body aches more.

20   (AR 39.)

B.  <u>The ALJ's Credibility Determination</u>

The ALJ gave the following reasons for finding not entirely credible Plaintiff's statements concerning the intensity, persistence, and limiting effect of her symptoms:  (1) her treatment has been routine, conservative, appropriate and sustained, and her continued use of medication suggests efficacy and toleration; (2) her activities of daily living include taking care of her mother as an in-home support service care worker, driving her mother to physician's appointments, going grocery shopping, and performing light housekeeping; and (3) she has been encouraged to lengthen her recreational walks with her dog and to participate in vocational rehabilitation.

The ALJ's credibility determination was essential to the ALJ's residual functional capacity assessment as well as the ALJ's evaluation of whether Plaintiff's mental impairment met or equaled the criteria of Listing 12.04.  As explained by the ALJ:

> The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listings in 12.00 of the Listing of Impairments (SSR 96-8p).  Therefore, the following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(AR 14.)

1    C.  Review of the ALJ's Credibility Determination

2         The Court has examined the record and concludes that the reasons given

3    by the ALJ for finding Plaintiff not credible are not supported by the record.

4         First, the ALJ stated that Plaintiff's treatment has been routine and

5    conservative.  However, Plaintiff was prescribed medication for her fibromyalgia

6    and gout, including Allopurinol, Cymbalta, Flexeril, Prednisone, and Vicodin.  (AR

7    215, 263, 268, 276, 296, 356.)  There was no medical testimony at the hearing or

8    documentation in the medical record that the prescribed medication constituted

9    "conservative" treatment of these conditions.  Indeed, some courts have noted that

10   because the recommended course of treatment for fibromyalgia does not include

11   surgery, compliance with a prescribed course of treatment with medication such

12   as Flexeril and Prednisone is not "conservative" treatment.  See, e.g., Miller v.

13   Colvin, 2014 WL 1873276, at *2 (C.D. Cal. May 9, 2014); Baker v. Astrue, 2009

14   WL 2231680, at *7 (C.D. Cal. July 22, 2009).  The ALJ was not qualified to draw

15   his own inference regarding whether more aggressive courses of treatment were

16   available for Plaintiff's conditions.  See Matamoros v. Colvin, 2014 WL 1682062,

17   at *4 (C.D. Cal. April 28, 2014) (ordering that on remand the ALJ develop the record

18   as to the issue of whether Plaintiff's prescribed treatment for fibromyalgia was

19   conservative).

20        Second, the ALJ found that Plaintiff's activities of daily living were not

9

consistent with her allegations of functional limitations.  It is not clear from the record that this is so.  The Ninth Circuit "has repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise does not in any way detract from her credibility as to her overall disability."  Vertigan v. Halter, 260 F.3d 1044, 1050 (9th Cir. 2001).  In order for a claimant's daily activities to be used to discredit her subjective pain and symptom testimony, the cited activities must occupy a substantial part of the claimant's day and utilize skills transferable to the workplace. Id. at 1049.

According to Plaintiff's testimony, she worked 98 hours per month (before her hours were reduced to 60 hours per month) as a caregiver for her mother.  She performed "really light housekeeping" and took her mother to doctor's appointments and the grocery store.  (AR 31.)  This testimony is not necessarily inconsistent with Plaintiff's claims that she will go multiple days without leaving her home because of her pain and depression (AR 37), and that she experiences flare ups of gout about twice a month that can last five to seven days and make it hard for her to get out of bed.  (AR 34).

It appears that Plaintiff's job as a caregiver for her mother may allow Plaintiff the flexibility to work when she is feeling well and not work when she is in pain or depressed.  If Plaintiff does not have to work a designated number of hours per

10

1  day, she may work intermittently throughout the entire week as her health permits.

2  The record does not support the conclusion that her work taking care of her mother

3  occupies a substantial part of her day and utilizes skills transferable to the

4  workplace.  There is a lack of evidence that her part-time job taking care of her

5  mother translates into being able to maintain the persistence and pace of regular

6  work.

7      Finally, the ALJ states that Plaintiff has been encouraged to lengthen her

8  recreational walks with her dog and to participate in vocational rehabilitation.  It is

9  unclear to the Court how this recommendation, contained in a Progress Note by

10  Exodus Wellness & Recovery (AR 441), bears upon Plaintiff's credibility.  The

11  Progress Note summarizes an assessment interview with Plaintiff on May 2, 2013,

12  in which Plaintiff described her struggles with depression and hypomania, her lack

13  of exercise, her poor eating habits, and her fear of seeking employment because

14  "I may become manic and go off on someone."  Plaintiff expressed that her goals

15  included improving communication skills, improving impulse control, reducing

16  depression, and vocational rehabilitation.   Consequently, Plaintiff was given

17  contact information for the Department of Rehabilitation and was given the

18  homework assignment to eat at least 2 meals per day and increase the length of

19  her walks with her dog.  That Plaintiff has the goals to become healthier and get

20  back to work and was encouraged to take steps to accomplish those goals, does

11

1    not mean that Plaintiff currently has the ability to achieve those goals.

2

3    D. <u>Propriety of Remand</u>

4         Under the "ordinary remand rule," when "the record before the agency does

5    not support the agency action, . . . the agency has not considered all relevant

6    factors, or . . . the reviewing court simply cannot evaluate the challenged agency

7    action on the basis of the record before it, the proper course, except in rare

8    circumstances, is to remand to the agency for additional investigation or

9    explanation." <u>Fla. Power & Light Co. v. Lorion</u>, 470 U.S. 729, 744 (1985).

10   Departure from the ordinary remand rule may be permissible under the "credit-as-

11   true" rule set forth in <u>Varney v. Sec'y of Health & Human Servs.</u>, 859 F.2d 1396

12   (9th Cir. 1988).

13        The Ninth Circuit has developed a three-part credit-as-true standard, each

14   part of which must be satisfied before a court can remand to an ALJ with

15   instructions to calculate and award benefits: (1) the record has been fully

16   developed and further administrative proceedings would serve no useful purpose;

17   (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence,

18   whether claimant testimony or medical opinion; and (3) if the improperly discredited

19   evidence were credited as true, the ALJ would be required to find the claimant

20   disabled on remand. <u>Garrison v. Colvin</u>, 759 F.3d 995, 1019 (9th Cir. 2014). Even

12

1  when all three elements are satisfied, raising the "rare circumstances" that would

2  allow departure from the ordinary remand rule, the decision whether to remand for

3  further proceedings or just award benefits rests within the discretion of the court.

4  Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1101-02 (9th Cir. 2014).

5       Here, as discussed above, the record has not been fully developed with

6  respect to any alternative courses of treatment for Plaintiff's fibromyalgia and gout

7  and the extent to which Plaintiff's job taking care of her mother requires regularity

8  and consistency.  Therefore, further administrative proceedings would be useful,

9  and remand is appropriate.

10

11               **V.  CONCLUSION**

12       For the reasons discussed above, Plaintiff's motion for summary judgment

13  [Doc. 14] is **GRANTED IN PART** and Defendant's motion for summary judgment

14  [Doc. 19] is **DENIED**.  The Commissioner's decision is **VACATED** and this matter

15  is **REMANDED** for further proceedings consistent with this opinion.

16  **IT IS SO ORDERED.**

17   Dated:  January 29, 2016

18                         Barry Ted Moskowitz, Chief Judge
                            United States District Court
19

20

13

14cv2977 BTM(DHB)